ORDERED.

**Dated:  March 23, 2016**

Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE:                                                    Case no.: 3:15-bk-02309-JAF

WILBUR LEON RILEA and                     Chapter 7
THELMA PEARL RILEA
a/k/a Thelma Pearl James-Rilea,

      Debtors.

_____/

AARON R. COHEN, AS TRUSTEE OF THE
ESTATE OF WILBUR LEON RILEA AND
THELMA PEARL RILEA a/k/a Thelma Pearl
James-Rilea,

      Plaintiff,

vs.                                                         Adv. No.: 3:15-ap-00289-JAF

WILBUR LEON RILEA and
THELMA PEARL RILEA
a/k/a Thelma Pearl James-Rilea,

      Defendants.

_____/

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

This proceeding is before the Court upon Plaintiff's, Aaron R. Cohen as Trustee of the Estate of Wilbur Leon Rilea and Thelma Pearl Rilea, Complaint objecting to the discharge of Defendants, Wilbur Rilea (Mr. Rilea) and Thelma Rilea (Mrs. Rilea). The Court held a trial and, upon consideration of the parties' evidence, makes the following Findings of Fact and Conclusions of Law.

### Background

Defendants retained attorney Peter C. Blinn (the "Attorney") to assist them with filing a bankruptcy case. Mrs. Rilea testified that she has never met the Attorney in person. Instead, she and the Attorney reviewed the bankruptcy petition and schedules over the phone. Purportedly, the Attorney never questioned her about having any claims or interests in any lawsuits. Mrs. Rilea testified that she filled out the bankruptcy forms without any assistance. On Schedule B, Defendants indicated that they had no contingent or unliquidated claims of any nature. On their Statement of Financial Affairs, Defendants indicated that they were not parties to any suit or administrative proceeding within one year immediately preceding the filing of their bankruptcy case. Defendants also did not list any property which had been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of their bankruptcy case. Defendants reviewed their bankruptcy schedules and Statement of Financial Affairs and thereafter signed them. On May 21, 2015, the Attorney filed a joint petition seeking relief under Chapter 7 of the Bankruptcy Code on behalf of Defendants. After Defendants' bankruptcy case was initiated, the Court appointed Aaron R. Cohen as the interim trustee (the "Trustee"), who at some point during the pendency of Defendants' bankruptcy case discovered that Mrs. Rilea was a member of a class action against AMS Transvaginal Mesh (the " Class Action") that was not disclosed on the schedules or Statement of Financial Affairs.

On June 16, 2015, the Trustee conducted a pre-341 meeting telephone conference with both Defendants during which he specifically asked them whether they had any personal injury or product liability claims. Both indicated that they had none. At the 341 meeting on July 2, 2015, the Trustee again asked if they had any personal injury or product liability claims. Defendants again answered they had none. At that time, the Trustee confronted Defendants with the information he had regarding Mrs. Rilea's interest in the Class Action. Mrs. Rilea was surprised the Trustee knew about her Class Action claim. Mrs. Rilea attempted to explain her previous denial by relaying a purported conversation she had with a member of the Attorney's staff prior to the 341 meeting. Specifically, Mrs. Rilea admitted that, after the pre-341 meeting phone conference, she telephoned the Attorney's office and spoke to a staff member. During that conversation, Mrs. Rilea explained that she had the impression that the Trustee was "fishing for something" during the pre-341 meeting phone conference and inquired if the Trustee could be talking about the Class Action claim. Purportedly, the member of the office staff advised that Defendants wait for the Trustee to contact them regarding this claim. Instead of coming forward with information regarding Mrs. Rilea's Class Action claim during the 341 meeting, Defendants chose to deny the fact that Mrs. Rilea was pursuing a Class Action claim. At trial, Defendants were unable to provide any credible explanation as to why they chose to deny the fact that Mrs. Rilea had an interest in the Class Action during the 341 meeting.[1]

The evidence presented by the Trustee established that Mrs. Rilea saw an advertisement on TV depicting a law firm reaching out to individuals who could be entitled to payment due to

---

[1] Mrs. Rilea testified, among other things, that even though she was represented by the Attorney she did not know she had to list her Class Action claim. The Court must emphasize that it expects all of the practitioners admitted in the United States Bankruptcy Court for Middle District of Florida to sit down with their clients and read through all of the documents filed along with the bankruptcy petition. The attorney's signature on the petition filed on behalf of a client signifies that said attorney has sat down, read through, and explained all of the questions from the bankruptcy documents filed along with the petition as well as has inquired about pertinent information.

injuries caused by a Mesh implant. As Mrs. Rilea had a Mesh implant, she decided to call the number. Subsequently, Mrs. Rilea received a letter dated August 15, 2014, from 1-800-Law-Firm (the "Law Firm"). The letter informed Mrs. Rilea that to determine her eligibility to participate in the Class Action, the Law Firm would have to gather her personal and medical information. The letter also contained Attorneys' Contingent Fee & Cost Employment Agreement providing that Mrs. Rilea was retaining the Law Firm as well as Aylstock, Witkin, Kreis & Overholtz, P.L.L.C. (jointly the "Law Firms") to represent her in her claim for damages arising out of use of a defective Mesh implant (the "Retainer Agreement").   The Retainer Agreement was executed by Mrs. Rilea on August 25, 2014. On the same date, Mrs. Rilea executed an Authorization to Disclose Health Information authorizing the Law Firms to use and disclose her health information. Subsequently, Mrs. Rilea received a letter styled: Notice of Mesh Settlement Process for AMS Claims dated January 9, 2015, informing her that the Law Firms had reached an agreement with the manufacturer of Mesh implants to create a settlement process to resolve her potential claims. In January of 2015, Mr. and Mrs. Rilea went to see an urologist, and Mrs. Rilea discussed her Mesh implant during that appointment. Mr. Rilea was present during Mrs. Rilea's conversation with her urologist.

The evidence further established that Mrs. Rilea received updates regarding the Class Action post-petition. For instance, Mrs. Rilea received a letter dated September 3, 2015, from one of the Law Firms informing her that the medical record custodian was unable to locate her medical records and asking her to call the office. At no point, did Defendants make any effort to let the Trustee know that their schedules or Statement of Financial Affairs were inaccurate and that Mrs. Rilea was actively pursuing her Class Action claim.

After the Complaint objecting to Defendants' discharge was filed, Defendants advised the Trustee of five other "class action[s] and/or receiverships they were part of." Defendants provided pertinent documentation regarding these class actions and the receivership after being subpoenaed. [2] Defendants received two checks issued on June 30, 2015, each for $ 74.81 from the Bank of America TCPA Settlement Claims Administrator.[3] In addition, Mr. Rilea received a check issued on July 30, 2015, from the Capital One TCPA Class Settlement Claims Administrator for $ 39.10. The Trustee introduced into evidence another document showing receipt of a check issued on August 25, 2015, for $ 5.50. The Trustee also obtained documentation establishing that Mrs. Rilea had an interest in the ZeekRewards Receivership. In particular, Mrs. Rilea received three checks issued on: 1) September 30, 2014, for $ 1,437.17; 2) December 23, 2014, for $ 615.93; and 3) July 31, 2015, for $ 1,026.54 from the ZeekRewards Receivership. None of these claims or interests were listed on the schedules or Statement of Financial Affairs. Mrs. Rilea testified she forgot about these claims. The Court does not find Mrs. Rilea's testimony credible. Mr. Rilea provided no explanation.

### Analysis

In the Complaint, the Trustee claims that Defendants: 1) by failing to list the personal injury claim during the preparation of their schedules and Statement of Financial Affairs, attempted to conceal the existence of the claim within one year prior to the date of filing of the petition; 2) by lying to the Trustee about the existence of the claim, attempted to conceal property of the estate after the date of the filing of the petition; and 3) by failing to disclose their

---

[2] The Subpoena to Testify at a Deposition requested that Mrs. Rilea furnish all documents related to the Murr v. Capital One Settlement Fund, the Capital One TCPA Class Settlement Program, the ZeekRewards Receivership, the Bank of America TCPA Settlement, and the Bank of America TCPA Settlement.

[3] The evidence established that a member of this class action was entitled to payment from a class action settlement if one received a non-emergency mortgage or credit card default servicing call or text on a cell phone from Bank of America through the use of an automatic telephone dialing system or prerecorded voice.

interests and claims, by signing inaccurate schedules and Statement of Financial Affairs and by lying under oath at the 341 meeting, made false oaths.  For this reason, the Trustee claims that Defendants' discharge should be denied pursuant to § 727(a)(2)(A)-(B) and pursuant to § 727(a)(4)(A).

"In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). "In order for an individual to get this extraordinary relief, the Bankruptcy Code requires that a Chapter 7 debtor fulfill certain fundamental duties, the most essential of which is the complete and honest disclosure of assets and recent transfers by the debtor." Syngenta Seeds, Inc. v. Eigsti (In re Eigsti), 323 B.R. 778, 783 (Bankr. M.D. Fla. 2005). "When a debtor does not fully disclose assets or recent transfers on . . . sworn Schedules or Statements of Financial Affairs, the court may decide to deny discharge of debt pursuant to 11 U.S.C. § 727." Id. ("The purpose of a Section 727 inquiry is to prohibit a discharge for those who play fast and loose with their assets or with the reality of their affairs.") (internal quotations omitted). Section "727(a) contains exceptions which if satisfied, completely deny the debtor's discharge 'causing all creditors to continue to have a post-petition claim against the debtor and his present and future assets.'" Bank of Dawson v. Cutts (In re Cutts), 233 B.R. 563, 569-70 (Bankr. M.D. Ga. 1999) (quoting Coggin v. Coggin (In re Coggin), 30 F.3d 1443, 1452 (11th Cir. 1994)).

"Section 727 . . . provides that a debtor shall be granted a discharge unless one or more of twelve enumerated reasons to deny the discharge exists." Menotte v. Hahn (In re Hahn), 362 B.R. 542, 546 (Bankr. S.D. Fla. 2007). The party seeking the denial of a discharge pursuant to § 727(a)(4)(A) must establish the following elements: 1) the debtor made a statement under oath;

2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. Shappell's Inc. v. Perry (In re Perry), 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000).  A false oath may involve a false statement or omission. Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999).

"Absent direct evidence of actual fraud, the plaintiff may establish actual fraud in one of two ways." The Cadle Company v. Leffingwell (In re Leffingwell), 279 B.R. 328, 350 (Bankr. M.D. Fla. 2002). "First, the plaintiff may show that the debtor has engaged in a pattern of concealment." Id.  "Second, the plaintiff may show the debtor['s] reckless indifference to the truth." Id. "[M]ultiple inaccuracies in a debtor's petition and bankruptcy schedules taken cumulatively [evidence] a cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A)." Eigsti, 323 B.R. at 785 (internal quotations omitted; alterations in original).

There is ample evidence to conclude that Defendants knowingly and fraudulently attempted to conceal Mrs. Rilea's Class Action claim. The evidence established that Mrs. Rilea was actively pursuing her claim long before the petition was filed as well as post-petition. It is undisputed that Defendants did not come forward with information about Mrs. Rilea's involvement in the Class Action when they were specifically questioned about it. Furthermore, Mrs. Rilea suspected the Trustee could be asking about her Class Action and discussed her suspicion with the Attorney's office staff. Shortly thereafter, Defendants again denied that Mrs. Rilea had any personal injury or product liability claim. The Trustee has established that Defendants knowingly and fraudulently failed to disclose their interests in other class actions and Mrs. Rilea's interest in the receivership. Defendants decided to reveal this information after the

Complaint objecting to their discharge has already been filed. As Defendants knowingly failed to fulfill their fundamental duty to provide complete and honest disclosure of their assets, the Defendants discharge will be denied pursuant to 727(a)(4)(A). The Court will separately enter Judgment in favor of the Trustee. Consequently, the Court does not need to address if Defendants' discharge should be denied pursuant to 727(a)(2)(A)-(B).